```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

        - v. -                      :        SENTENCING MEMORANDUM

ROBERT M. QUINONES,                 :        07 Cr. 544-01 (DLC)

            Defendant.              :

- - - - - - - - - - - - - - - - - - x
```

April 11, 2008


Honorable Denise L. Cote
U.S. District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007


Dear Judge Cote:

I write on behalf of my client, Robert M. Quinones, in anticipation of his sentencing, which is scheduled for April 25, 2008.  For the reasons set forth below, I urge the Court to impose a term of five years of probation with a special condition of long-term inpatient mental health and substance abuse treatment at Odyssey House in New York City, to be followed by outpatient mental health and substance abuse treatment.

I attach for the Court's consideration in connection with sentencing: Letter of Madeline Quinones (Ex. A); Letter of Brandan Michael Quinones (Ex. B); Letter of Linda Jane Quinones (Ex. C); Letter of Veronica Ayala (Ex. D); Letter of Katherine Ayala (Ex. E); Letter of Miriam Arroyo (Ex. F); Forensic Psychological Evaluation prepared by Dr. Jessica Pearson (Ex. G); and, Information concerning Odyssey House (Ex. H).

## I.    Objections to the Pre-Sentence Report

I have not yet received the final version of the pre-sentence report.  If the defense has objections to it, I will forward them to the Court expeditiously.

## II.   Factual Background

Robert Quinones is a generous, loving, and ethical husband,

Hon. Denise L. Cote                                April 11, 2008
U.S. District Judge                                Page 3
Southern District of New York

      **Re:  United States v. Robert Quinones**
              **07 Cr. 544 (DLC)**

father of two sons, uncle, and brother, whose serious mental
health issues led him to commit the instant offense.  He has been
steadily and lawfully employed for many years, and has no
criminal history. In the three years since the offense conduct
ended, Robert Quinones has had no trouble with the law.  He has
prepared only accurate tax returns.

     Robert Quinones was born in 1957, the third of five children
born to Pablo Suarez DeJesus Quinones and Carmen Maisonet
Quinones.  He dropped out of high school at age 16 in order to
enlist with the U.S. Navy, because he had lost two cousins and
several friends in the Vietnam War and wanted to serve his
country.  He served for one and one-half years.  He left the Navy
early -- but with an honorable discharge -- after his father
suffered a heart attack and his mother begged him to come home to
help her out.  As his wife Madeline writes in her letter to the
Court, Mr. Quinones was always the one his mother asked for help,
even when his siblings were closer to home. See Letter of
Madeline Quinones, Exhibit A, at 1.  After leaving the Navy, Mr.
Quinones earned his GED.  He began working at any job he could
find to help support his parents.  His father died in 1978 of a
massive stroke. Mr. Quinones' mother became increasingly
dependent upon him, and Mr. Quinones did all that he could to
support his mother emotionally and financially.  He worked long
hours for a low wage at Cablevision.  In 1983, he met his soul-
mate, Madeline Quinones neè Arroyo, and they have been together
for the last twenty-five years.  Soon after they married, his
oldest brother, Michael, died of HIV-related complications, to
the deep sorrow of Mr. Quinones and their mother.  Then, as
Madeline and he were building their own family, with two young
sons, his mother died unexpectedly of stroke in 1991, leaving Mr.
Quinones entirely bereft.

     Following his mother's death, Mr. Quinones began to suffer
from depression and he isolated himself from his family.  A
charismatic, intelligent, hard-working man devoted to his family,
Mr. Quinones had no experience with depression and few resources
to cope with its debilitating effects.  In order to cope with his
depression, he self-medicated, first by obtaining prescription
opiates from a pharmacist he knew, and then, when the
prescription opiates became difficult to get, by using heroin,

Hon. Denise L. Cote                          April 11, 2008
U.S. District Judge                          Page 4
Southern District of New York

     **Re:   United States v. Robert Quinones**
           **07 Cr. 544 (DLC)**

which he had seen his co-workers at Cablevision buy and use.
This started what is now a 17-year downward spiral and a highly
divided life.

    At first, he was able to largely compartmentalize his
substance abuse and his depression and continue to work and to be
an active, engaged father and family member.  After leaving
Cablevision, he worked for several years at the New York City
Board of Education (where his wife has been employed as a teacher
for many years) as an Assistant Teacher.  He left to work for
Coca Cola, then found work as a security consultant for Slomin's.
For several years, he also prepared taxes, working at H&R Block,
during the tax season, in order to make extra income.   He made
several unsuccessful attempts to complete detoxification or
rehabilitation programs. See Psych. Eval. at 5.

    He was deeply involved not only with his own sons, but in
the raising of his nieces and nephews, particularly the two sons
of his sister, Linda, whose father did not participate in their
upbringing.  As Linda writes to the Court, Mr. Quinones guided
her sons through adolescence, and made sure they had everything
they needed to make them equipped to succeed.  Her younger son
wrote a poem for a school project when he was fifteen called "My
Uncle," that read:

    In this world there's no one as strong as he
    with love and compassion for the whole world to see.
    He stepped up as a father when my real one stepped
    down,
    then all of a sudden my frown turned around.
    He is my uncle, my dad, and my hero and no one can take
    that away,
    for he is always here to brighten up my day.
    His name is Robert Quinones, and god sent him to me,
    and I will never give him up, we'll fight life and win,
    you'll see.

Letter of Linda Quinones, attached as Ex. C, at 2.

    Sadly, as his depression continued untreated, his efforts to
push down and hide his suffering and his substance abuse grew

Hon. Denise L. Cote                          April 11, 2008
U.S. District Judge                          Page 5
Southern District of New York

> Re:  **United States v. Robert Quinones**
>      **07 Cr. 544 (DLC)**

less effective.  His opiate use also increased, sometimes he was
using as much a 15 bags of heroin a day.  He became less able to
be the active, engaged, father and family member he had always
been.  In August of 1998, he entered the Department of Veterans
Affairs Opiate Substitution Program and was treated with a
synthetic opiate used as a replacement therapy for heroin
addiction. See Psych. Eval. at 5.  The VA Program is aimed at
helping people transition from heroin to methadone, but does not
have a counseling component.

       In 1999, while working at Slomin's Securities full-time, and
earning supplemental money by preparing tax returns at H&R Block,
Mr. Quinones became friendly with a co-worker named Orlando
Reyes. Mr. Quinones told Reyes that he was going to start his own
tax preparation business. Mr. Quinones obtained an E-file number
under his wife's name, because she had better credit than he did.
As Mr. Quinones built up the business, Reyes began to prepare tax
forms for him, because Mr. Quinones was still working full-time
as a security consultant, now at ADT Securities.  The clients
would drop off or mail in their information.  Mr. Quinones would
give the client information to Reyes, who would prepare the tax
returns during the day while Mr. Quinones was at work.  Mr.
Quinones would E-file and sign the forms in the evenings.   Mr.
Quinones and Reyes shared the profits from the business.  As his
depression worsened and his use of opiates increased, Mr.
Quinones had a very difficult time paying any attention to the
tax forms.  He would simply sign batches of completed tax returns
that Reyes left for him, even when he saw entries that looked
wrong to him.  It was around this time that Mr. Quinones began to
have such horrible and violent nightmares that he would wake up
screaming or to find himself pressing down on his wife's arms
while she lay next to him in bed. See Letter of Madeline
Quinones, at 7.  Reyes also prepared Mr. Quinones' and his wife's
tax returns during this time period, and again, Mr. Quinones did
not even review the forms, he just signed them.  When he received
the refunds, he realized it was more than he was entitled to, but
because of his mental state, he simply let his concern go and
used the money to pay for his expenses. By 2002, Mr. Quinones'
addiction to heroin and his inability to face his problems had
led him to revert to heroin use, on top of the synthetic opiate
he was prescribed.  Because of his heroin use, he had to leave

Hon. Denise L. Cote                          April 11, 2008
U.S. District Judge                          Page 6
Southern District of New York

      Re:  **United States v. Robert Quinones**
            **07 Cr. 544 (DLC)**

the VA Opiate Dependence Program.  Without the synthetic opiate,
his substance abuse and mental health grew worse and worse, and
the situation at Uncle Sam's Nephew continued.  Each tax season,
Reyes would prepare the returns and Mr. Quinones would file them.
Outside of tax season, he had little or no contact with Reyes.
Mr. Quinones was entirely passive and felt helpless to control
the world around him. His conduct – using heroin, hiding his
activities from his family, signing tax returns he knew were
false – was so at odds with his self-image and the rest of his
life that he struggled to accept what he was doing, and felt
victimized.  Finally, he returned to the VA Program in November
2003, and stopped using heroin.  He began to regain some sense of
self, but his depression continued.  In September 2004, Mr.
Quinones was contacted by IRS agents, and twice agreed to be
interviewed by them, without counsel, and also gave consent for
the IRS to make mirror images of the business's computers.  After
Mr. Quinones gave the IRS agents Reyes' contact information,
Reyes disappeared.

      Since the offense conduct ended, Mr. Quinones has prepared
tax returns himself, and he has done so accurately.  He has also
had no issues with his own or his family's tax returns. He has
not been able to work at all when it is not tax season.  During
the tax seasons, he has tried to prepare as many tax returns as
possible, in order to earn income, but because of his depression,
he has not been able to earn much money.  Because of the loss of
his income, and the ballooning of the variable rate on their
mortgage, in 2007, the Quinones' could no longer make their
mortgage payments, the bank repossessed their house, and they
were forced to file for bankruptcy.  As the IRS investigation
continued, Mr. Quinones signed a tolling agreement permitting the
extension of the statute of limitations for numerous tax returns.

      In the years since the offense conduct ended, Mr. Quinones
has continued to consistently attend the VA Clinic, and currently
goes four times a week, receiving methadone and limited
counseling aimed at opiate use.  He has managed to stay free of
heroin, other than two or three isolated relapses. His depression
has continued, and he has only begun to receive treatment for it
in the last month.

Hon. Denise L. Cote                          April 11, 2008
U.S. District Judge                          Page 7
Southern District of New York

> **Re:** **United States v. Robert Quinones**
>        **07 Cr. 544 (DLC)**

On August 17, 2007, Mr. Quinones voluntarily surrendered to agents after the Indictment was unsealed.  After his voluntary surrender, he suffered an anxiety attack and was taken to the emergency room before being processed by the marshals.  He was released on bail the same day and has been in compliance with all of the conditions of his release.  On December 21, 2007, Mr. Quinones pleaded guilty to Counts 1 to 27 of the Indictment.  The total loss amount based on the offenses of conviction is $106,577.  The Government is also alleging relevant conduct of $363,466.

Mr. Quinones recently was evaluated by a forensic psychologist, Jessica Pearson, who performed a clinical interview and psychological testing of Mr. Quinones, as well as the Personality Assessment Inventory, the Repeatable Battery of Neuropsychological Symptoms, and the Trauma System Inventory. The evaluation found that he has significant memory problems and an impaired ability to concentrate and attend to tasks.  Psych. Eval., at 7, attached as Ex. G. The evaluation concluded that:

"Mr. Quinones's severe substance abuse, depressive disorder, and passive stance led him to be vulnerable to manipulation. . . . his insight and judgment were impaired from the drugs as well as from the depression. He was making choices and decisions which were clearly not in his or his family's best interests, from discontinuing treatment and hiding his problems from his family, to engaging in negligence and impulsive behavior in his work, which led to fraudulent practices.  It is clear that Mr. Quinones has experienced a tremendous amount of guilt and shame from his drug abuse.  It is likely that he became very used to avoiding and denying the truth of the deterioration of his personal life.  It isn't difficult to see how this could also translate from his personal life to his professional life.  Given an opportunity to expand his career and own a business, a huge sense of accomplishment, he took it, all the while denying the facts and avoiding any investigation into who was giving him this opportunity and how it was being obtained."

-7-

Hon. Denise L. Cote                          April 11, 2008
U.S. District Judge                          Page 8
Southern District of New York

              Re:  **United States v. Robert Quinones**
                   **07 Cr. 544 (DLC)**

Psych Eval., at 9-10, attached as Ex. G.  Dr. Pearson recommends
substance abuse treatment and intensive psychotherapy in a
mandated treatment setting with strict enforcement or rules and
structure.  Id. at 10.

        Last month, at the urging of his Pre-Trial Services Officer,
Mr. Quinones began seeing a psychiatrist, who prescribed
Wellbutrin for depression and Lunesta for insomnia, and they have
begun weekly psychotherapy sessions.  This is the first
psychotherapy he has received since the death of his mother 17
years ago.

        In addition to his mental health issues, Mr. Quinones'
physical health is also poor.  He requires surgery on both his
knees for torn ligaments and blockage in the cartilage, and has
difficulty walking.  The methadone has caused obesity (he has
gained approximately 75 pounds) and the loosening and falling out
of his teeth.

        During the eight months he has been on Pre-Trial
Supervision, Mr. Quinones has not only been in compliance with
his conditions, but also has been extremely open and honest with
his supervising officer.  It was from Mr. Quinones that Pre-Trial
learned he was continuing to prepare taxes, which led the Court
to order him to stop doing so.  It was from Mr. Quinones' own
reports that Pre-Trial became concerned about his mental state
and urged him to seek treatment.

        The guilt and shame Mr. Quinones has felt for years about
his drug use has now been compounded by equally strong feelings
that he committed the offense conduct, placing his wife and
children in jeopardy, the last thing this exceptionally generous
and giving man ever wanted to do. His wife Madeline writes that
if he were to go to prison, "the sentence would be devastating
for our family."  Letter of Madeline Quinones, Ex. A, at 8. They
have rarely been separated in their twenty-five years together,
and they have already endured the loss of their first home, the
declaration of bankruptcy, the shame of a criminal proceeding,
and the constant fear of Mr. Quinones' incarceration.

Hon. Denise L. Cote                              April 11, 2008
U.S. District Judge                              Page 9
Southern District of New York

> Re:  **United States v. Robert Quinones**
>       **07 Cr. 544 (DLC)**

## III. Applicable Sentencing Law

When imposing sentence, the Court is required to consider
the factors set forth in 18 U.S.C. § 3553(a) in determining what
is a reasonable sentence in each individual case. See United
States v. Booker, 543 U.S. 220 (2005); see also United States v.
Fernandez, 443 F.3d 19 (2d Cir. 2006).

Section 3553(a) directs the Court to impose a sentence that
is "sufficient, but not greater than necessary, to comply with
the purposes set forth in paragraph 2."  Section 3553(a)(2)
states that such purposes are:

   (A)  to reflect the seriousness of the offense, to
        promote respect for the law, and to provide just
        punishment for the offense;

   (B)  to afford adequate deterrence to criminal conduct;

   (C)  to protect the public from further crimes of the
        defendant; and

   (D)  to provide the defendant with needed educational
        or vocational training, medical care, or other
        correctional treatment in the most effective
        manner.

To arrive at such a sentence, the Court is further directed
to consider: (1) the nature and circumstances of the offense and
the history and characteristics of the offender; (2) the kinds of
sentences available; (3) the kinds of sentence and the sentencing
range established in the Sentencing Guidelines; (4) policy
statements issued by the Sentencing Commission; (5) the need to
avoid unwarranted sentence disparities among similarly situated
defendants; and (6) the need to provide restitution to any
victims of the offense.  See 18 U.S.C. § 3553(a)(1), (a)(3)-(7).

The Guidelines range is but one of many factors set forth
in 18 U.S.C. § 3553(a) that a district court is to consider when
imposing sentence.  See Booker, 543 U.S. 220.  The Supreme Court
recently emphasized that the Guidelines are not presumptive and
that even a district court's disagreement with the policy
considerations of the Guidelines is a legitimate basis for

Hon. Denise L. Cote                    April 11, 2008
U.S. District Judge                    Page 10
Southern District of New York

        Re:  **United States v. Robert Quinones**
             **07 Cr. 544 (DLC)**

sentencing below a given range.  See Gall v. United States, 128
S.Ct. 586 (Dec. 10, 2007) (upholding a district court's sentence
of probation in a case involving the distribution of over 10,000
pills of ecstacy where the Guidelines' range was 30-37 months);
Kimbrough v. United States, 128 S.Ct. 558 (Dec. 10, 2007)
(upholding a district court's decision to sentence a defendant
below the Guidelines range based on a disagreement with the
Guidelines' policy of treating the distribution of crack cocaine
more severely than powder cocaine).  Indeed, in Kimbrough, the
Government conceded that "'courts may vary [from Guidelines
ranges] based solely on policy considerations, including
disagreements with the Guidelines.'" Id. at 570. In every case,
the sentencing court "must make an individualized assessment
based on the facts presented."  Gall, 128 S.Ct. at 597.

**IV.  Any Term of Imprisonment Would Be Greater Than Necessary To**
**     Deter Mr. Quinones, Would Hinder His Rehabilitation, And**
**     Is Not Necessary To Promote Respect For The Law**

        The only statutory factor weighing in favor of an
incarcerative sentence in this case is the advisory Guidelines;
each of the other factors weighs strongly against incarceration
and in favor of a probationary sentence.

        Mr. Quinones' history and characteristics show that he is
capable of living a law-abiding life.  He has no criminal
history.  He is a responsible and loving person, as the letters
from his family and the psychological evaluation richly attest,
who suffers from severe drug addiction and depression.  If these
mental health issues are treated, he presents no risk of
recidivism, given his strong ethical sense and shame and remorse,
as well as the support of his wife and children.

        The offense conduct was committed because of Mr. Quinones'
mental health issues.  He was extremely vulnerable to
manipulation, as the forensic evaluation concluded, and because
of his passivity, depression, and use of opiates, he did not
question what was happening around him or employ his ordinarily
strong judgment and sense of rectitude.  Although he knew he was
doing something wrong by filing the inaccurate forms, he was too
frightened and confused by his depression and opiate use to act

-10-

Hon. Denise L. Cote                          April 11, 2008
U.S. District Judge                          Page 11
Southern District of New York

> **Re:  United States v. Robert Quinones**
> **07 Cr. 544 (DLC)**

on his knowledge, but instead went along with what Reyes was
doing.

   Mr. Quinones has shown his remorse not only through how he
has lived in the years since the offense conduct, but also in the
manner he dealt with this investigation and prosecution.  He
voluntarily agreed to be interviewed by IRS agents.  He gave
consent to a full search of his business computers. He entered
into a tolling agreement which permitted the prosecution of
conduct now almost eight years old.  He pleaded guilty without
the benefit of a plea agreement.  He has been open with his Pre-
Trial Services Officer.

   The Court has the authority to sentence Mr. Quinones to a
lengthy probationary sentence with a mandated condition of
lengthy residential treatment for his mental health and substance
abuse issues, as well as medical care, until he is ready to
transition to an outpatient setting.  The forensic evaluation
recommends exactly this, programmatic support in a mandated
treatment setting with strict enforcement of rules and structure,
followed by long term individual psychotherapy and
pharmacological treatment for depression.  Psych. Eval., at 11.
The forensic evaluation does not recommend incarceration, because
in a prison setting Mr. Quinones will not be able to receive the
kind of treatment he requires in order to effectively deal with
his depression and substance abuse, and incarceration would be
likely to "severely impact his psychological functioning and
worsen his depression."  Id.

   There is a residential facility in Manhattan that appears
ideally suited to treating Mr. Quinones: Odyssey House.  See Ex.
H.  Odyssey House offers one of the only residential programs in
the country to combine community-based psychiatric care with
intensive therapeutic treatment.  Id. at 1.  It has programming
specifically aimed at older adults, rather than younger people,
with the combination of mental health and substance abuse issues.
Id..  The program is accustomed to dealing with people
transferred from the criminal justice system.  Id. at 2. The
participants are required to follow a strict psychiatric/medical
regimen, and participate in appropriate educational and
vocational activities for a period of twelve to eighteen months.

Hon. Denise L. Cote                          April 11, 2008
U.S. District Judge                          Page 12
Southern District of New York

       Re:  **United States v. Robert Quinones**
            **07 Cr. 544 (DLC)**

Id.  Because Odyssey House has a medical facility, as well as
providing intensive mental health treatment, Mr. Quinones will be
able to detoxify from his methadone addiction in a controlled
setting.  Methadone withdrawal is a serious and often frightening
process, including bone pain, severe diarrhea and spasms, and is
frequently described as more difficult than withdrawing from
heroin.  Because Mr. Quinones has health insurance (through his
wife's employment at the Board of Education), his participation
in Odyssey House would be covered if court-mandated.  Such a
program would be no easy feat for Mr. Quinones, who has now been
addicted to opiates and severely depressed for nearly 17 years.
Unlike his prior attempts at rehabilitation, he would not be able
to leave this program (knowing jail would be the result) and he
would be forced to face the demons he has so long avoided.  In
many ways, this would be a more difficult endeavor for Mr.
Quinones than prison.  If incarcerated, it is likely Mr. Quinones
would be sent to a camp, where he could avoid any activities or
interaction, sit alone day in and day out in his dorm room, and
never deal with any of his issues.

      Incarcerating Mr. Quinones would mean the imprisonment of
someone who poses no risk of recidivism, if treated, who has
evinced remorse, and who has already been punished significantly
by a felony conviction, by the extreme shame of this situation,
and by his guilt for putting his wife and children through this.
It would also mean more time during which his severe mental
health and substance abuse issues would go entirely untreated and
it would subject him to the brutality of a "cold-turkey"
methadone withdrawal, without trained medical supervision or
psychotherapy.

      The Sentencing Guidelines, which in this case advise a
sentence of 30 to 37 months, based on the total tax loss,
including over $300,000 of uncharged conduct, do not take into
consideration Mr. Quinones' post-offense conduct, his cooperation
with the government by signing a tolling agreement, or the mental
health issues that led him to commit the conduct, all of which
bear directly on the sentence necessary to punish, deter, and
rehabilitate this particular defendant.

      A probationary sentence would not cause an unwarranted

Hon. Denise L. Cote                          April 11, 2008
U.S. District Judge                          Page 13
Southern District of New York

          Re:  **United States v. Robert Quinones**
               **07 Cr. 544 (DLC)**

sentence disparity, given the particular characteristics of this
defendant and this offense conduct.  Tax fraud convictions are
susceptible to a wide range of sentences, based on the particular
nature of the defendants.  For example, the owners of Cipriani
restaurant were recently sentenced for a $10 million dollar tax
fraud.  The son, Guiseppe, received a three year probationary
sentence for this multi-million dollar fraud.  The father
received a conditional discharge.

          The Supreme Court in Gall recognized that although custodial
sentences are "qualitatively more severe than probationary
sentences," "[o]ffenders on probation are nonetheless subject to
several standard conditions that substantially restrict their
liberty," for example, "Probationers may not leave the judicial
district, move, or change jobs without notifying, and in some
cases receiving permission from, their probation officer or the
court.  They must report regularly to the their probation
officer, permit unannounced visits to their homes, refrain from
associating with any person convicted of a felony, and refrain
from excessive drinking."  128 S.Ct. at 595-96 (internal
citations omitted).

          In this particular case, the substitution of a requirement
of lengthy inpatient residential treatment for any imprisonment
seems appropriate.  Mr. Quinones is a wonderful man in many ways,
sensitive, caring, loving, ethical.  The person his wife
describes, who puts himself in danger to care for others, who has
worked long hours to support his family, who was a model father
and husband and son, is a person worth saving.  That can only be
done through sustained treatment. His depression and substance
abuse stem from the loss of his mother, from which he has never
recovered.  The self-destructiveness and low self-esteem he has
endured in the last 17 years since her death have crippled the
charismatic, intelligent man described by his wife.  A prison
term will not address any of Mr. Quinones' issues and will only
drive his self-esteem further into the ground.  It would also
worsen his depression, in a context in which no individual
psychotherapy is available, and be dangerous given his
difficulties with mobility because of his knee injuries.

          The requirement of restitution and the special assessment

Hon. Denise L. Cote                           April 11, 2008
U.S. District Judge                               Page 14
Southern District of New York

       **Re:**   **United States v. Robert Quinones**
           **07 Cr. 544 (DLC)**

will also serve as an additional punishment and deterrence to Mr.
Quinones.

## V.   Waiver of Interest

In addition, if the Court orders restitution, Mr. Quinones
respectfully requests that the Court waive the requirement of
interest pursuant to Title 18 U.S.C. §3612(f)(3), otherwise,
interest begins to accrue fifteen days after judgment.  A waiver
of interest would enable Mr. Quinones to repay the amount over
time without the overwhelming burden of interest compounded
daily, which he does not have the financial ability to pay.
(Title 18 U.S.C. §3612(f) provides that interest accrues daily on
the unpaid balance of an amount to be paid in restitution).

## VI.   No Fine Is Warranted

No fine is warranted here, where Mr. Quinones must pay a large
restitution amount and a $2700 special assessment, and is
indigent. See U.S.S.G. § 5E1.2(a),(e); see also U.S.S.G. § 5E1.2,
App. Note 3 (the fact that a defendant is represented by assigned
counsel is a significant indicator of present inability to pay
any fine).

## VII. Conclusion

We ask that the Court consider all of these factors – along
with its own sense of what would constitute a fair and just
sentence – in determining the appropriate sentence for Mr.
Quinones. See United States v. Jones, 460 F.3d 191, 195 (2d Cir.
2006) (noting that a sentencing judge may consider his or her own
sense of what would constitute a fair and just sentence under all
the circumstances, so long as all of the 3553(a) factors are
taken into account).  No term of imprisonment is needed to deter,
rehabilitate or punish Mr. Quinones, and imprisonment would in
fact thwart Mr. Quinones' rehabilitation.  He is very aware of
the wrongfulness of his conduct and desperately wants to break
the hold of his opiate dependence and work through his depression
and its root causes.

Hon. Denise L. Cote                    April 11, 2008
U.S. District Judge                    Page 15
Southern District of New York

     **Re:**  **<u>United States v. Robert Quinones</u>**
          **07 Cr. 544 (DLC)**


                                 Respectfully Submitted,


                                 Deirdre D. von Dornum
                                 Assistant Federal Defender
                                 (212) 417-8767


cc:       Michael P. Ben'ary, Assistant U.S. Attorney (via ECF)
          Ross Kapitansky, U.S. Probation Officer (via hand
             delivery)
          Robert Quinones (via U.S. Mail)